1

2

3

4                                                    **E-FILED on** __12/15/05__

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9              FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                              SAN JOSE DIVISION

11

12   ZORAN CORPORATION and OAK            No. C-04-02619 RMW
     TECHNOLOGY, INC.,
13                                         ORDER DENYING DEFENDANTS' MOTION
                    Plaintiffs,            FOR SUMMARY JUDGMENT OF
14                                         INVALIDITY DUE TO IMPROPER
            v.                             INVENTORSHIP UNDER 35 U.S.C. 102(f)
15
     MEDIATEK, INC., MINTEK DIGITAL, INC., **[Re: Docket No. 271]**
16   ASUSTEK COMPUTER, INC., LITE-ON
     INFORMATION TECHNOLOGY CORP.,
17   TEAC CORPORATION, TEAC AMERICA,
     INC., TERAPIN TECHNOLOGY PTE., LTD.
18   CORPORATION and TERAOPTIX L.P. d/b/a
     TERAPIN TECHNOLOGY,
19
                    Defendants.
20

21

22          Defendant MediaTek, Inc. ("MediaTek") and its co-defendants (collectively "defendants") move for

23   summary judgment of invalidity due to improper inventorship under 35 U.S.C. § 102(f).  Plaintiffs Zoran

24   Corporation ("Zoran") and Oak Technology, Inc. ("Oak") (collectively "plaintiffs") oppose the motion.  The

25   motion was heard on September 2, 2005.  The court has read the moving and responding papers and

26   heard the argument of counsel.  For the reasons set forth below, the court denies defendants' motion for

27   summary judgment.

28

# I. BACKGROUND

MediaTek and Zoran are both involved in the manufacture and sale of optical drive controller chips used in CD-ROM[1] and DVD-ROM[2] drives.  Plaintiffs have asserted three patents related to optical drive controller chips in this action, two of which – U.S. Patent No. 6,584,527 ("'527 patent") and U.S. Patent No. 6,546,440 ("'440 patent") – are at issue in defendants' motion for summary judgment.  The '527 and '440 patents are continuations of U.S. Patent No. 5,581,715 ("'715 patent").

"The invention described and claimed in the '715 patent relates to an improved CD-ROM drive controller which provides faster and simplified data communication."  *Oak Technology v. Int'l Trade Comm'n*, 248 F.3d 1316, 1318 (9th Cir. 2001).  It discloses "a compact disk drive controller to control the access of information from an optical compact disk (CD) digital data storage device by a host computer using an integrated drive electronics (IDE) data bus or an industry standard architecture (ISA) data bus."  '715 patent, abstract.  The named inventors for the '715, '527 and '440 patents are Oak's Phil Verinsky and Michael Case ("named inventors").  In this motion, however, defendants argue that the '527 and '440 patents are invalid under 35 U.S.C. § 102(f) for failing to name engineers at Western Digital as co-inventors.  They claim that the named inventors of the  '527 and '440 patents did not invent a key limitation of the claimed invention: the receipt of multi-byte commands through the ATA[3] data port.  Instead, defendants allege that this key limitation was first invented by Shishir Shah and other engineers at Western Digital and that Oak incorporated this element into its invention only after receiving the information from Western Digital in the form of a draft specification for ATAPI[4] ("draft ATAPI specification").

## A.    Litigation to Date

### 1.    The '715 Patent

In 1997, Plaintiff Oak initiated an action in the International Trade Commission ("ITC") against United Media Corporation ("UMC") and others alleging infringement of the '715 patent.  This resulted in

---

[1]        Compact disc, read only memory.

[2]        Digital video disc, read only memory.

[3]        Advanced technology attachment.

[4]        ATA packet interface.

the International Trade Commission Investigation, No. 337-TA-409 (the "409 Investigation").  UMC

settled with Oak, agreeing not to produce and import the alleged infringing CD-ROM drives.

UMC spun off MediaTek, which allegedly continued to make the products Oak had asserted

infringed the '715 patent.  Consequently, Oak sued UMC and MediaTek for breach of contract in this

court.  Meanwhile, Oak initiated a second ITC proceeding, again claiming infringement of the '715 patent,

in which the ITC ultimately found that MediaTek's products did not infringe the '715 patent.

### 2.    The '527 and '440 Patents

In April 2004, plaintiffs initiated another ITC proceeding asserting that products made or imported

by MediaTek and other defendants in this action infringed the '527 and '440 patents.  Investigation No.

337-TA-506 ("the 506 investigation").  Judge Luckern, the Administrative Law Judge ("ALJ") presiding

over the action, found that the patents were valid and enforceable and that claim 3 of the '527 patent was

infringed.  Final Initial and Recommended Determination, Declaration of Aaron Wainscoat ("Wainscoat

Decl."), Ex. 5 at 1.

Defendants asserted a similar improper inventorship defense in the '506 investigation.  Judge

Luckern held that defendants had not presented clear and convincing evidence to support the inventorship

challenge because Shah's testimony was only corroborated by oral testimony from his friends and former

colleagues at Western Digital "recalling events that occurred some twelve to thirteen years ago" and there

are "no contemporaneous documents that memorialize Shah's idea."  *Id.* at 139.[5]

### B.    The Invention

### 1.    General Area of Technology

The invention of the '440 and '527 patents is related to CD drive controllers.  In 1994 when the

'715 patent was filed, CD-ROM was an emerging media for storing and retrieving data and CD drives

were starting to be incorporated into personal computers.  All CD drives include a CD load mechanism,

spindle, drive electronics, and a controller.  '715 patent, at 1:54-55.  The controller manages the flow of

---

[5]    As will be set forth in further detail below, defendants now support their contentions regarding Shah's inventorship with two memoranda that purport to communicate the disputed invention to Microsoft and Apple.

1   commands, status flags, and data between the host personal computer and the CD drive electronics.  *Id.* at

2   1:57-59.

3          At the time of the invention, conventional CD drive designs supported the ISA bus convention and

4   required the insertion of an interface card or host adapter card into an ISA input/output bus slot of the host

5   personal computer.  *Id.* at 1:60-63.  These requirements resulted in additional expense and the permanent

6   commitment of an input/output bus slot by the host computer to permit communication with the CD drive

7   controller.  The dedication of an input/output bus slot reduces the range of employment of the host

8   computer.  *Id.* at 2:5-19.

9          IDE/ATA, an integrated drive electronics with an ATA interface, is an alternative bus structure used

10   in the personal computer architecture.  *Id.* at 2:21-24.  This interface is connected by means of a dedicated

11   40-pin connector found on many computer mother boards and therefore, does not take up an ISA

12   input/output slot.  *Id.* at 2:29-34.  The '715 patent and its children, the '527 and '440 patents, disclose the

13   use of the IDE/ATA bus by CD drive controllers to communicate with the host computers and thus avoid

14   the limitations of using the ISA bus.  *Id.* at 2:35-3:2.

15                      **2.      Disputed Aspect of the Invention**

16          The disputed aspect of the invention involves the receipt of multi-byte commands over the ATA

17   bus.  Multi-byte commands are transmitted byte by byte and stored into some structure until the command

18   has been fully transmitted.  The ATA bus has eight addressable registers, 1F0 through 1F7, through which

19   bytes of data may pass.  The 1F0 address is commonly known as the data port.  The feature of the

20   invention under dispute is the receipt of multi-byte commands through the ATA data port.

21          Defendants contend that receiving multi-byte commands through the ATA data port is a key

22   limitation of claim 2 of the '527 patent, and independent claims 1 and 14, and claims 7 and 19 (which

23   depend on claims 1 and 14 respectively) of the '440 patent.  However, defendants argue that the named

24   inventors did not invent this limitation.

25          Claim 2 the '527 patent states, in pertinent part:

26                 An optical drive controller to control the communication of data between a
                   storage medium in an optical drive device and a host computer via an
27                 IDE/ATA data bus, said data bus for receiving and transmitting data between
                   said controller and said host computer, said optical drive device having drive
28                 electronics, said optical drive controller comprising:
                   . . .

ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF INVALIDITY DUE TO IMPROPER
INVENTORSHIP – C-04-02619 RMW
WH/MAG                                           4

1        a host interface connecting said host computer and said optical drive
2        controller directly via an IDE/ATA data bus, said host interface including *a*
       *data port operable to receive data addresses and commands from said*
3        *host computer and transmit data to said host computer, a multibyte*
       *command packet buffer operable, per command*, to store sequentially
4        contiguous bytes of command information received through the data port in a
       single command transfer.

5   '527 patent, at 28:56-29:9 (emphasis added).

6        Claim 1 of the '440 patent contains a similar element: "a multi-byte command buffer operable, per

7 command, to store sequentially contiguous multiple command bytes received from said host computer in a

8 single command transfer, the multi-byte command buffer addressed by one of a plurality of ATA command

9 block register addresses." '440 patent at 28:38-43. Similarly, claim 14 includes "a multi-byte command

10 buffer, addressed by one of said plurality of ATA command block register addresses, operable, per

11 command, to sequentially store multiple command bytes received contiguously from said host computer in a

12 single command transfer." *Id.* at 29:60-64. The specifications of these two patents, which are substantially

13 identical to the specification of the parent '715 patent, also indicate the particular data port used for

14 receiving 12-byte packet commands is 1F0. *See, e.g.*, '527 patent at 8:51-60.

15        Defendants argue that the claims and associated descriptions in the specification indicate that the

16 capability of receiving multi-byte commands is an essential limitation of Oak's invention. Defendants

17 support this assertion by quoting the "Summary of the Invention," which states that the host interface of the

18 CD drive controller comprises "a command FIFO[6] to transfer commands from the host computer to the

19 system controller of the drive electronics of the CD drive." Mot. Summ. J. at 3; '527 patent at 3:33-36.

20 Defendants claim that because FIFO is a structure that can receive multiple bytes of data in a first in, first

21 out manner, the patented host interface must have the ability to receive multi-byte host commands over the

22 IDE/ATA. *Id*.

23        **3.**      **Defendants' Claim of Improper Inventorship**

24        In their motion for summary judgment, defendants contend that the named inventors of the '527 and

25 '440 patents, Verinsky and Case, did not invent the limitation of receiving multi-byte commands through the

26 ATA data port at 1F0. Mot. Summ. J. at 5. Defendants claim that Shishir Shah of Western Digital first

27

28        [6]      FIFO stands for first-in, first-out.

ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF INVALIDITY DUE TO IMPROPER
INVENTORSHIP – C-04-02619 RMW
WH/MAG                   5

conceived the idea and that Verinsky and Case incorporated the idea into their invention only after they learned of it from a draft ATAPI specification sent to them by Western Digital.  The draft produced by Shah and other Western Digital employees included a specification and protocol for the host interface of a CD-ROM device to communicate over the IDE/ATA bus through the data port.  *Id*. at 5-6.  Thus, defendants allege that the patents should have named Shah and other employees at Western Digital as co-inventors and that, because the patents do not name all inventors, they are invalid.

## II.  ANALYSIS

Defendants seek summary judgment of invalidity of the '440 and '527 patents for improper inventorship.  Defendants contend that the undisputed facts establish that the '440, and '527 patents are invalid under 35 U.S.C. § 102(f)  for failure to name Western Digital employees as inventors of a key feature claimed in each patent: the receipt of multibyte commands through the data port at address 1F0.

### A.     Legal Standards

"A person shall be entitled to a patent unless . . . he did not himself invent the subject matter sought to be patented." 35 U.S.C. § 102(f).  A patented invention may be the work of two or more joint inventors.  "Because 'conception is the touchstone of inventorship,' each joint inventor must generally contribute to the conception of the invention." *Ethicon, Inc., v. U.S. Surgical Corp.*, 135 F.3d 1456, 1460 (Fed. Cir. 1998) (citing *Burroughs Wellcome Co. v. Barr Lab., Inc.*, 40 F.3d 1223, 1227-28 (Fed. Cir. 1994)).   However, each of the joint inventors need not "make the same type or amount of contribution to the invention." *Id.*  While each "needs to perform only a part of the task which produces the invention . . . one does not qualify as a joint inventor by merely assisting the actual inventor after conception of the claimed invention." *Id.*  "An inventor 'may use the services, ideas and aid of others in the process of perfecting his invention without losing his right to a patent.'" *Shatterproof Glass Corp. v. Libbey-Owens Ford Co.*, 758 F.2d 613, 624 (Fed. Cir. 1985).

A patent is invalid if more or fewer than the true inventors are named. *Gemstar-TV Guide Int'l, Inc. v. Int'l Trade Comm'n*, 383 F.3d 1352, 1381 (Fed. Cir. 2004) (citing *Jamesbury Corp. v. United States,* 518 F.2d 1384, 1395 (Ct. Cl. 1975)).  "If nonjoinder of an actual inventor is proved by clear and convincing evidence, a patent is rendered invalid." *Pannu v. Iolab Corp.*, 155 F.3d 1344, 1349 (Fed. Cir. 1998) (citations omitted).  Inventorship is a question of law with underlying factual issues. *Checkpoint*

1   *Systems, Inc., v. All-Tag Security S.A.*, 412 F.3d 1331, 1338 (Fed. Cir. 2005).

2          "Because co-inventors need not 'make a contribution to the subject matter of every claim of the

3   patent,' 35 U.S.C. § 116, inventorship is determined on a claim-by-claim basis." *Trovan, Ltd. v.*

4   *Sokymat SA*, 299 F.3d 1292, 1302 (Fed. Cir. 2002) (citing *Ethicon, Inc. v. U.S. Surgical Corp.*, 135

5   F.3d 1456, 1460 (Fed. Cir. 1998)).  Thus, a finding of invalidity of the entire patent for improper

6   inventorship may be appropriate even if inventorship is improper on a single claim. *See, e.g., Ethicon*, 135

7   F.3d at 1460.

8          Summary judgment is proper when the pleadings, discovery and affidavits show that there is "no

9   genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

10  Fed. R. Civ. P. 56(c).  Material facts are those which may affect the outcome of the case. *Anderson v.*

11  *Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is

12  sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

13         Here, "[b]ecause a patent is presumed valid under 35 U.S.C. § 282, there follows a presumption

14  that the named inventors on a patent are the true and only inventors." *Gemstar-TV Guide*, 383 F.3d

15  1352.  Thus, to prove the patents invalid for failure to properly join inventors, defendants bear the

16  additional burden of proving the underlying facts of co-inventorship by Western Digital personnel by clear

17  and convincing evidence.  *See Hybritech Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1376

18  (Fed. Cir. 1986).  The Federal Circuit has set forth the following approach to invalidity challenges for

19  nonjoinder of a co-inventor:

20                  When a party asserts invalidity under § 102(f) due to nonjoinder, a district
                court should first determine whether there exists clear and convincing proof
21              that the alleged unnamed inventor was in fact a co-inventor.  Upon such a
                finding of incorrect inventorship, a patentee may invoke section 256 to save
22              the patent from invalidity.  Accordingly, the patentee must then be given an
                opportunity to correct inventorship pursuant to that section.
23
24  *Pannu*, 155 F.3d at 1350.  "[I]f a patentee can demonstrate that inventorship can be corrected as

25  provided by [35 U.S.C. §  256], a district court must order correction of the patent, thus saving it from

26  being rendered invalid." *Id.*

          **B.       Claim Construction**
27
          As a threshold matter, plaintiffs contend that it is improper for the court to address the inventorship
28

1  until after the claims have been construed.[7]  Without construing the claims in question, plaintiffs contend, it is

2  impossible to properly determine the subject matter that the claims encompass.  *Trovan*, 299 F.3d at 1302

3  ("Moreover, an inventorship analysis, like an infringement or invalidity analysis, begins as a first step with a

4  construction of each asserted claim to determine the subject matter encompassed thereby.").

5      Defendants counter on reply that it is clear that the disputed limitation is present in claim 2 of the

6  '527 patent and claims 7 (dependent to claim 1) and claim 19 (dependent to claim 14) of the '440 patent.

7  Claim 2 of the '527 patent reads, in relevant part:

8      a host interface connecting said host computer and said optical drive
        controller directly via an IDE/ATA data bus, said host interface including a
9      data port operable to receive data addresses and commands from said host
        computer and transmit data to said host computer, a multibyte command
10     packet buffer operable, per command, to store sequentially contiguous
        bytes of command information received through the data port in a single
11     command transfer.

12  Dependent claim 7 of the '440 patent reads:

13      The apparatus of claim 1, wherein one of said plurality of ATA command
        block register addresses that can be used to address the multi-byte
14     command buffer is the address of a data port in the ATA transfer protocol.

15  Defendants claim that is it clear that the "multi-byte command buffer . . . to store sequentially contiguous

16  multiple command bytes received from said host computer," in claim 1 is addressed by "one of a plurality of

17  ATA command block register addresses."  According to them, it is equally clear that claim 7 specifically

18  provides that the ATA command block register address used is the data port, 1F0.  '527 patent at 29:22-

19  25 ("The apparatus of claim 1, wherein the one of said plurality of ATA command block register addresses

20  . . . is the address of a data port in the ATA transfer protocol.")[8]

21      Throughout their briefing, plaintiffs assert one major issue that relates to the construction of the

22  disputed claims: they contend that the claims cited by the defendants claim the receipt of multi-byte

23  command data through the data port, whereas the draft ATAPI specification only defines how multi-byte

24

25      [7]      The claim construction hearing was held on August 23-24, 2005, after plaintiffs submitted
    their opposition to defendants' motion for summary judgment.  The order for claim construction has been
26  issued since then.  *See Zoran Corp. v. Mediatek*, Inc., 2005 WL 2206725 (N.D.Cal.,2005).  However,
    the issues raised here were not raised during the claim construction hearing.

27
        [8]      Defendants assert that independent claim 14 and its dependent claim 19 similarly claim
28  receipt of multi-byte commands through the data port.

ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF INVALIDITY DUE TO IMPROPER
INVENTORSHIP – C-04-02619 RMW
WH/MAG                                             8

1    commands are transmitted without defining *how* such command data is to be received (i.e., what to do with

2    the data once it is transmitted)[9].  Opp'n at 7.  This was not one of the terms that the parties requested the

3    court to construe during the claim construction hearing.  At hearing for this motion, plaintiffs contend that a

4    multi-byte command received from the data port could be put in a multibyte command buffer or be stored

5    one at a time separately.  Hr'g Tr. at 10-14.  They claimed that the novelty of Oak's patented device was to

6    store a multi-byte command in a multibyte command buffer.  They further pointed out that in the ITC

7    proceeding defendants had taken the position that Oak's invention was to store the bytes separately.

8            Defendants, on the other hand, assert that the distinction between transmission and reception is

9    irrelevant: if the data is being transmitted through the data port, it must necessarily be received through the

10   data port, thus the specification discloses both transmission and reception of multi-byte command data.

11   Reply at 6 ("The transmission and receipt of a command at a particular address are two sides of the same

12   coin.").  Defendants urge the court to review of sections 4.2, 5.7, 5.8, and 5.9 of the draft ATAPI

13   specification.  However, in a light most favorable to plaintiffs, the non-moving party, the court finds that

14   these sections only describe the mechanism for transmitting the data through the data port and that the data

15   is written to the data register.  They do not describe how the data is written to the data register.  June 10,

16   1993 Draft ATAPI Specification, Declaration of Jerry Chen ("Chen Decl."), Ex. 7 at 1039DOC00112,

17   1039DOC00120-124.[10]

18           Defendants also contend that claim 2 of the '527 patent, claim 1, 7 and claims 14, 19 of the '440

19   patent only require the receipt of multi-byte commands through the data port and that plaintiffs are trying to

20   add another limitation of using a multi-byte command buffer.  Hr'g Tr. at 41:10-17.  While most of the cited

21   claims contain the phrase "multi-byte command buffer," for purposes of this motion, the court will assume

22   that the limitation of the receipt of multi-byte commands through the data port at address 1F0 is, as

23

24   _____

25       [9]     To process a multi-byte command, multiple bytes must be transmitted and received before
     the command can be utilized.  Thus, there must be some structure or processing associated with the receipt
26   of multi-byte commands.  This is what the plaintiffs assert ATAPI does not specify.

27       [10]    The court is likewise unconvinced that the "admissions" of Oak's expert, Mr. Samuels,
     demonstrates that the draft ATAPI specification teaches what to do with command data once it is
28   transmitted through the data port.  *See* Reply at 8.

ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF INVALIDITY DUE TO IMPROPER
INVENTORSHIP – C-04-02619 RMW
WH/MAG                                    9

1  defendants claim, claimed in at least one claim of both the '527 and '440 patents, while the use of a multi-

2  byte command buffer is not a limitation.

3  **C.   Alleged Co-Inventors**

4  To meet the clear and convincing burden of proof, alleged co-inventors must prove their

5  contribution to the conception with more than their own testimony respecting the facts surrounding a claim

6  of derivation or priority of invention.  *Trovan*, 299 F.3d at 1302.  To determine whether the alleged

7  inventor's testimony has been sufficiently corroborated, the court performs an "evaluation of all pertinent

8  evidence . . . so that a sound determination of the credibility of the alleged inventor's story may be reached."

9  *Id.*  "Documentary or physical evidence that is made contemporaneously with the inventive process

10  provides the most reliable proof that the inventor's testimony has been corroborated."  *Sandt Tech., Ltd. v.*

11  *Resco Metal & Plastics Corp.*, 264 F.3d 1344, 1350-51 (Fed. Cir. 2001) (in the context of proving

12  inventor's inventorship of prior art).

13  Defendants argue that Western Digital employees Shishir Shah (and possibly, as they argue on

14  reply, Devon Worrell) conceived of the receipt of multi-byte commands through the data port.  Defendants

15  do not definitively state which of these alleged inventors conceived of the disputed invention, insisting

16  instead that they have presented clear and convincing evidence that someone other than Case and Verinsky

17  did so.

18  Plaintiffs, however, assert that defendants' inability to name the alleged co-inventors presents a

19  compelling reason why defendants' motion for summary judgment must fail: absent specific information

20  regarding who the alleged co-inventor was, plaintiffs contend that defendants cannot meet their burden of

21  proving by clear and convincing evidence that there was another co-inventor of the disputed element.

22  Because the assertion that "Western Digital employees" would be insufficient to prove co-inventorship by a

23  particular person or persons by clear and convincing evidence, plaintiffs assert there necessarily remains an

24  issue of material fact as to co-inventorship.  Defendants, on the other hand, assert that the precise identity

25  of the inventor is not material.  According to defendants, the undisputed evidence establishes that the

26  disputed element was not invented by the named inventors, thus someone other than the named inventors

27  must have contributed to the disputed invention.  This, defendants contend, compels the conclusion that

28  they are entitled to summary judgment under 35 U.S.C. § 102(f).  *See* Reply at 3 ("Section 102(f) does not

ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF INVALIDITY DUE TO IMPROPER INVENTORSHIP – C-04-02619 RMW
WH/MAG

1  require defendants to identify nonjoined inventors by name – *as long as* there is clear and convincing

2  evidence that someone other than the inventors should have been named.") (emphasis in original).

3  The court need not reach the issue of whether defendants may simply assert that someone other

4  than the named inventors invented an aspect of the invention without identifying a particular co-inventor to

5  prevail on summary judgment.  As set forth below, the court does not find at this stage clear and convincing

6  evidence that Western Digital conceived of the disputed limitation before the named inventors did.

7  Furthermore, even assuming that defendants could prove that Shishir Shah or Devon Worrell conceived of

8  utilizing the ATA data port to transmit multi-byte commands, the court would nevertheless find that there is

9  an issue of fact as to whether anyone at Western Digital could be considered a co-inventor based upon the

10  named inventors' admitted utilization of the ATAPI draft specification.

11  **D.** **Inventors' Conception of the Invention**

12  **1.** **Alleged Conception Date by Named Inventors**

13  Plaintiffs argue that Oak's Verinsky and Case conceived the idea of receiving multibyte command

14  through IDE/ATA before they had access to such information from Western Digital.  Plaintiffs' Opp. at 3-4.

15  They support their contention with (1) testimony by Verinsky and Case and (2) various documents.

16  Verinsky stated that David Tsang, president of Oak, asked him to embark on an IDE CD-ROM

17  project in December 1992 and that during January 1993, he had made the initial decisions of making the

18  CD-ROM controller connect directly to the IDE bus and following the ATA specification as closely as

19  possible to make it compatible.  Wainscoat Decl., Ex. 25 (Verinsky Tr.) at 42, 45-46.  He testified that he

20  made the decision to have the controller support all of the ATA task file registers, 1F0 through 1F7.  *Id*. at

21  45.  He also made the decision of using a multi-byte command FIFO to assemble multibyte commands

22  during January 1993.  *Id*. at 54.  Verinsky testified that he and his co-inventor had changed the size of their

23  multibyte command from 8 bytes to 12 bytes to accommodate the 11 byte-long host command of NEC,

24  one of their customers.  *Id*. at 81-82.  He stated that he did not think the choice of address was critical but

25  that they were thinking of 1F0, 1F2 and 1F4, which are referred to as 0, 2 and 4.  *Id*. at 103.  Case also

26

27

28

ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF INVALIDITY DUE TO IMPROPER
INVENTORSHIP – C-04-02619 RMW
WH/MAG                                   11

1   testified that the starting point for task file register address to be associated with COMIN FIFO[11] on OTI-

2   11[12] was 1F0.  Wainscoat Decl., Ex. 25 (Case Tr.) at 156.

3          Plaintiffs cite a number of documents to corroborate Verinsky's testimony.  Plaintiffs' Opp. at 4.

4   For example, an entry in Case's notebook dated January 20, 1993, states "Task file register using the

5   COMIN FIFO" and "ct[2:0][13] is the address of the COMIN FIFO," Wainscoat Decl., Ex. 8 at

6   1049DOC0043; another entry dated February 8, 1993 lists FIFO addresses 0 to 7 performing various

7   functions, *id.* at 1049DOC0047; a "OTI-011 Task List" prepared by Don Smith, an Oak employee, dated

8   January 21, 1993 states "look at the implications of the new NEC 11 byte long host command packets on

9   the depth of the COMIN FIFO,"  Wainscoat Decl., Ex. 9 at 1048DOC01354; a document, "OTI-011

10  Microcontroller Registers," dated April 21, 1993 lists various controls and their functions, including

11  "COMIDEB-COMIN FIFO mode when high, IDE task file register mode when low,"  Wainscoat Decl.,

12  Ex. 12 at 1048DOC00184; and a notebook entry dated April 25, 1993 states "[t]he other write registers

13  (COMIN, 1F1-1F7) should not be inhibited."[14]  Wainscoat Decl., Ex. 13 at 1004DOC00036.

14         As threshold question, defendants attack the competency of plaintiffs' evidence to corroborate

15  inventorship by the named inventors, asserting the documents are (1) vague, (2) irrelevant, (3) not

16  witnessed, or (4) were prepared by or under the direction of the inventors.  Reply at 12-15.  They contend

17  that the sentence "COMIDEB-COMIN FIFO mode when high, IDE task file register mode when low" is

18  irrelevant to the receipt of multibyte commands through the IDE data port; the notation "COMIN, 1F1-

19

20  _____

21  [11]     The name of Oak's multi-byte command buffer for receiving multi-byte command from the
    host.

22  [12]     OTI-11 is a dual mode chip developed by Oak that can operate on the ISA bus when in
    OTI-12 mode or on the IDE bus when in OTI-11 mode.  Chen Decl., Ex. 3 (Case Tr.) at 327:7-15.  The
23  OTI-11 or IDE mode is an embodiment of Oak's claimed invention.

24  [13]     Case testified that ct[2:0] means 3 bits and can represent any of the 8 addresses on the
    IDE bus, 1F0 to 1F7.
25

26  [14]     In reviewing the record, the court finds an entry in Verinsky's notebook dated April 25,
    1993 indicates a proposal of using 1F0 for data write and read and other addresses for other functions,
    including 1F7 for command.  Wainscoat Decl., Ex. 11 at 1049DOC00033-39.  A similar chart was found
27  in Ex. 13, which is identified as "New Select Inhibit List dated 4/25/93 [506 Hrg. Ex. No. CX-1845]."
    Wainscoat Decl. ¶ 16.  While it appears that this was an exhibit presented during the 506 Investigation, it is
28  otherwise unclear what the origin of this document is.

ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF INVALIDITY DUE TO IMPROPER
INVENTORSHIP – C-04-02619 RMW
WH/MAG                                    12

1   1F7" is vague and not for multibyte command buffer on the IDE bus; and the list of FIFO addresses are

2   eight single-byte registers.  Reply at 14-15.

3          But the primary dispute is over whether the inventor's own unwitnessed notebooks of documents

4   prepared at the inventors' direction may properly be considered as corroborative of conception.  Relying

5   on *Brown v. Barbacid*, 276 F.3d 1327 (Fed. Cir. 2002), *Hahn v. Wong*, 892 F.2d 1028 (Fed. Cir.

6   1989), and *Thurston v. Wulff*, 164 F.2d 612 (C.C.P.A. 1947), defendants further argue that such

7   evidence may not be used to corroborate inventor's own testimony.  It is well established that "[a] party

8   seeking to prove conception via the oral testimony of a putative inventor must proffer evidence

9   corroborating that testimony."  *Brown*, 276 F.3d at 1335.  When determining sufficient corroboration, a

10  court applies a "rule of reason" and "examines all pertinent evidence to determine the credibility of the

11  inventor's story."  *Id*. (citation omitted).

12         The *Brown* court upheld the determination by the Patent and Trademark Office Board of Patent

13  Appeals and Interferences ("Board") that in that case, the inventor's unwitnessed notebooks and

14  autoradiographs about assay experiments did not corroborate the inventor's testimony.  *Id*.  However, the

15  court held that the Board erred in failing to consider whether the notebook pages and autoradiographs

16  themselves demonstrated the inventor's conception.  *Id*. at 1337.  Therefore, the inventor's unwitnessed

17  documents were not actually excluded from consideration.  In *Hahn*, the Federal Circuit held that inventor's

18  own notebooks and plots could not corroborate inventor's assertion of reduction to practice.  892 F.2d at

19  1032.  In *Singh v. Brake*, however, the Federal Circuit distinguished *Hahn* and held that a notebook page

20  might corroborate conception of what an inventor wrote on the page, while it might not show that

21  "experiments were actually performed, as required for a reduction to practice."  222 F.3d 1362, 1370

22  (Fed. Cir. 2000). Thus, inventor's own notebook or other documents prepared by an inventor or under the

23  instruction of the inventor carry some weight "in serving as corroboration of conception."  *Id.* at 1369.

24  Furthermore, requiring independent corroboration for conception might force an inventor to prematurely

25  disclose proprietary information which would be otherwise kept secret.

26         Defendants also contend that Oak did not have a clear and definite idea as to which address to use

27  to receive multibyte commands prior to receiving the draft ATAPI specification.  Reply at 10.  Defendants

28  point out Case's affirmative response to the question that whether the notation [2:0] in his notebook refers

1  to any of the eight possible locations.  Case stated that the notation did not refer to a specific address.

2  Defendants argue that Case's statement rebuts plaintiffs' contention that Oak's inventors had already

3  decided that the COMIN FIFO could be accessed through the IDE bus at a range of addresses.

4  However, Case's statement is potentially consistent with Verinsky's testimony that the inventors did not

5  think the choice of address was critical to the invention and that they had considered multiple addresses

6  prior to receiving the ATAPI Specification..

7       During the hearing, argument focused on the two addresses, 0 and 4, a control bit, HADDR11, and

8  their relation with the two different modes of Oak's OTI-11 device.  The OTI-11 was a dual mode device.

9  Its two modes were: (1) the innovative OTI-11 mode using the IDE bus and (2) the OTI-12 mode using

10  the ISA bus, which was in the prior art.  Plaintiffs contend that two addresses are both used in the IDE

11  mode and can be controlled by setting HADDR11 to either 0 or 1, while defendants argue that 0 refers to

12  an address on the ISA bus and that HADDR11 operates in the OTI-12 mode.

13       The two addresses appear on an entity dated February 24, 1993 in Verinsky's notebook.

14  Wainscoat Decl., Ex. 11 at 1049DOC00033.  The entry contains a chart with three columns, a name

15  column, a "OTI-12" column, and a "OTI-11/NEW" column.  Verinsky testified at a hearing in the 506

16  Investigation that the "OTI-12" column shows the address that the OTI-11 started with and the "OTI-

17  11/NEW" column shows the addresses that were newly added to OTI-11.  Wainscoat Decl., Ex. 25

18  (Verinsky Tr.) at 106:17-107:24.  He explained that the address for COMIN was "0" (for 1F0) under the

19  "OTI-12" column because 0 was used in the ISA bus and so was considered as a default.  He added the

20  address "4" under the "OTI-11/NEW" column to provide more flexibility to customer.  He further explained

21  that a customer could choose the address by programing their microcontroller to set the HADDR11 bit to

22  either a 0 or a 1.  Plaintiffs thus claim that this shows the HADDR11 was used as a control for the COMIN

23  address in the IDE mode, not as a switch between the ISA mode and IDE mode.  Hr'g Tr. at 27.

24       Defendants, however, argue that HADDR11 operates in the OTI-12 mode and that the number 0

25  in the "OTI-12" column refers to an address on the ISA bus and has nothing to do with 1F0 or the IDE bus

26  used in the OTI-11 mode.  Hr'g Tr. at 50:25-51:23.  In support of this contention, defendants point out a

27  statement in "OTI-011 Microcontroller Registers" which defines the function of HADDR11: "When low,

28

ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF INVALIDITY DUE TO IMPROPER
INVENTORSHIP – C-04-02619 RMW
WH/MAG                                                                    14

1   the address for the COMIN/SBOUT[15] fifo is as in the OTI-12.  When high, the new address defined for

2   the OTI-11 is used."  Wainscoat Decl., Ex. 13 at 1048DOC00184.  Defendants claim that the sentence

3   "the address for the COMIN/SBOUT fifo is as in the OTI-12" confirms that OTI-11 is a dual mode chip.

4   Hr'g Tr. at 51:15-20.  However, a fair reading of the sentence might also support plaintiffs' contention that

5   they were using the ISA address in OTI-12 as the default for OTI-11 because of the word "as."

6   Defendants further contend that when testifying on his notebook entry about adding HADDR11 to the

7   schematics "to control whether COMIN/SBOUT are at address 0 or address 4," Case admitted that the

8   addresses 0 and 4 were for the ISA bus not for the IDE bus.  Hr'g Tr. at 46:19-47:16; Chen Decl. Ex. 3

9   (Case Tr.) at 340:16-343-16;  Wainscoat Decl., Ex. 8 at 1049DOC0051.  A review of Case's transcript

10  reveals that Case agreed with defense counsel about COMIN and SBOUT being used in OTI-012 mode

11  because he thought that it was the only mode where COMIN/SBOUT would make sense.  Chen Decl. Ex.

12  3 (Case Tr.) at 340-343.  However, defendants do not dispute that Verinsky was talking about the IDE

13  mode in a document dated June 7, 1993, where it states "[a]dd control bit so that COMIN/SBOUT [16] can

14  be accessed through 1F0 during IDE mode."  Therefore, it is unclear whether COMIN/SBOUT can be

15  used in OTI-11 mode and whether 0 refers to an address on the ISA bus or on the IDE bus.  Thus,

16  defendants' dual mode arguments do not eliminate any question of fact as to the conception date of the

17  alleged invention by the named inventors.

18              **2.       Alleged Conception Date by Mr. Shah**

19              Defendants assert that Shishir Shah and possibly Devon Worrell conceived the idea of using the

20  ATA data port for the transmission of multibyte commands at the end of 1992.  They support their

21  contention primarily with witness testimony by Shishir Shah, Thomas Hanan, Richard Rutledge, and Mehran

22  Ramezani during the ITC 506 Investigation.

23

24

25  _____

26  [15]      SBOUT transfers status bytes from the CD controller to the host.  Defense counsel stated
    when examining Case, that COMIN/SBOUT denotes for COMIN and SBOUT using the same address.
27  Chen Decl. Ex. 3 (Case Tr.) at 340-343.

28  [16]      Defendants misquoted this notation as "COMIN/FIFO" in their reply brief.   Reply at 15.
    It is unclear whether the misquotation had any effect on defendants' arguments.

ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF INVALIDITY DUE TO IMPROPER
INVENTORSHIP – C-04-02619 RMW
WH/MAG                                    15

At a hearing conducted before ALJ Luckern, Shah testified that in December 1992 he came up with the mechanism of attaching a CD-ROM drive to the IDE bus by using SCSI command descriptor blocks in 12 to 16 bytes.  Chen Decl., Ex. 12 (Shah Tr.) at 2467:18-2468:18.

Hanan testified that Shah conceived of the idea of putting the SCSI packetized command set across the existing IDE register during the fourth quarter of 1992, Chen Decl., Ex. 14 (Hanan Tr.) at 2364:5-2365:14, and that they had the interface "pretty well mapped out" in January 1993.  *Id*. at 2366:19-2367:21.  Hanan also testified that sometime between January and April 1993, A1 and A0 were selected for the concept and that he himself played an important role in this selection.  Wainscoat Decl., Ex. 25 (Hanan Tr.) at 2394.  Notably, when asked about his preparation for the '506 investigation hearing, he stated that he did not see any document created before May 7, 1993 that referenced packetization of commands.  *Id*. at 2407.

Rutledge testified that Shah and Hanan worked on ATAPI from January through July 1993.  Chen Decl., Ex. 15 (Rutledge Tr.) at 68:6-69:5.  But he did not recall anyone talking about using 12-byte long command prior to April 1993.  *Id*., at 73:10-17.

Ramezani testified that in a meeting held in January 1993, Shah disclosed to him that he was working on a way to have CD-ROM on IDE interface by sending a packet of data over the data port of the IDE bus.  Chen Decl., Ex. 13 (Ramezani Tr.) at 2551:5-2554:2.

Defendants introduce further evidence that the idea of transmitting multibyte commands through the data port was communicated by Western Digital to Apple, IBM, and Microsoft.  A memo dated May 4, 1993 sent by Rutledge to Apple Computer and IBM stated that Western Digital's direction at that time was to use a single IDE Command Op Code that "signifies a packet transfer to the data register is to follow." Wainscoat Decl., Ex. 17 at 2.  On May 15, 1993, Rutledge sent an email to Microsoft stating that they were "developing an IDE CD-ROM Interface specification that [was] based on adding a new IDE command that effectively [allowed] packetized command blocks to be sent to the IDE device via the IDE data port."  Wainscoat Decl., Ex. 18 at 2.  Defendants explain that "packet transfer to the data register" means sending multi-byte commands through the data port and that "packetized command blocks" refers to multi-byte commands.   Mot. Summ. J. at 7-8.

1    Plaintiffs contend that neither the oral testimony nor documentary evidence demonstrates by clear

2    and convincing evidence that Shah or any other Western Digital employee conceived of utilizing the data

3    port to transmit multibyte data before Verinsky and Case had done so.  First, plaintiffs question the

4    credibility of the testimony by Shah, Hanan, Rutledge, and Ramezani.  Opp'n at 6.  Citing *Sandt*, plaintiffs

5    argue that the witnesses do not satisfy the corroboration facts identified by the Federal Circuit.[17]  They

6    contend that, except for Rutledge, the witnesses proffered by defendants are (1) longtime friends or

7    colleagues, (2) paid litigation consultants for defendants, and (3) represented by defendants' counsel.  *Id*. at

8    6.  *See* Wainscoat Decl., Ex. 3; Ex. 25, Shah, Tr. at 2512 , 2514; Ex. 2; Ex. 25 (Hanan Tr.) at 2379-

9    2381; Ex. 4; Ex. 25 (Ramezani, Tr.) at 2549-2550, 2555-2556.[18]

10    Plaintiffs argue that Western Digital's communications with Apple, IBM and Microsoft do not

11    corroborate Western Digital's alleged invention of the disputed limitation because they (1) were sent after

12    Oak's conception date; (2) did not specify the address of the data port is 1F0, and (3) did not describe the

13    manner by which multi-byte commands are received according to the claim.  Plaintiffs' Opp'n at 7.

14    Although the court does not find particularly persuasive plaintiffs' argument that the memos do not specify

15    1F0, even assuming (1) that these documents corroborate conception by Shah and (2) the memos

16    communicated the idea of using the ATA data port to transmit and receive multibyte commands in May

17    1993, there remains a question of fact as to whether they were sent after the named inventors' conception

18

19    [17]    Noting that oral testimony to corroborate inventorship is permissible, but unreliable, in
anticipation inquiries, the Federal Circuit stated:

20

21                This court has articulated the following illustrative factors that may be useful
                in guiding the determination of whether a witness' testimony provides
                sufficient corroboration: 1) the relationship between the corroborating
22                witness and the alleged prior user; 2) the time  period between the event
                and trial; 3) the interest of the corroborating witness in the subject matter in
23                suit; 4) contradiction or impeachment of the witness' testimony; 5) the
                extent and details of the corroborating testimony; 6) the witness' familiarity
24                with the subject matter of the patented invention and the prior use; 7)
                probability that a prior use could occur considering the state of the art at
25                the time; and 8) impact of the invention on the industry, and the commercial
                value of its practice.

26    *Sandt*, 264 F.3d at 1351.

27    [18]    Plaintiffs further challenge the completeness of  Mr. Shah's concept as described in the May
7, 1993 document.  Opp'n at 5.  Mr. Shah had admitted that the document only described part of his
28    innovation over cross-examination.  Wainscoat Decl., Ex. 25 (Shah Tr.) at 2537-2538.

ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF INVALIDITY DUE TO IMPROPER
INVENTORSHIP – C-04-02619 RMW
WH/MAG                                                                17

1   date (as discussed above) and whether the invention the memos supposedly corroborate were necessary to

2   the conception of the element under dispute.

3             **3.**      **Contribution of the Draft ATAPI to Conception**

4                   **a.**      **The Alleged Transmission and Integration of Western Digital's Idea**

5         Defendants claim that the named inventors got this idea of receiving multibyte commands through

6   the ATA data port from Western Digital. Mot. Summ. J. at 5. It is undisputed that Oak received the draft

7   ATAPI specification on or about June 10, 1993. It also appears to be undisputed that named inventor

8   Verinsky had access to and discussed with co-inventor Case the draft ATAPI specification by June 13,

9   1993. *See, e.g.*, Chen Decl., Ex. 9 (Verinsky Tr.) at 947:7-948:8. Defendants argue that Verinsky

10  admitted that the invention did not receive multibyte commands through the IDE/ATA data port until he had

11  been made aware of the draft ATAPI specification. *Id*. at 8.

12        Defendants quote Verinsky's testimony in a deposition to prove that Oak's invention, the COMIN

13  structure, was not accessible at 1F0 prior to learning of Western Digital's plan to receive multibyte

14  commands via the data port. Mot. Summ. J. at 8. During this testimony, Verinsky testified that before June

15  7, 1993, Oak "had logic to access COMIN through the IDE bus, but not through the 1F0 port." He stated

16  that he learned from Peter Brown, the Oak employee to whom Western Digital transmitted the draft

17  ATAPI specification, that Western Digital was proposing that the ATAPI commands be sent through the

18  1F0 data port. Accordingly, he and his co-inventor "made a change simply to add an address that it could

19  be accessed through." Chen Decl., Ex. 8 (Verinsky 506-Tr.) at 541:11-542:21. Defendants also rely

20  upon Verinsky's testimony at the '506 Investigation hearing:

21          Q: Now at some point, you learned from Peter Brown that Western Digital
            was intending that ATAPI commands were going to be sent though the data

22          port. Right?
            A: Yes.

23          Q: Okay. Any you told Peter Brown that you could change the address
            through which the multibyte command buffer could be accessed so that it

24          could be accessed through the data port, right?
            A: Yes.

25          Q: And that was in response to his telling you that the Western Digital folks
            were planning to do just that, right?

26          A: I believe so.

27  Chen Decl., Ex. 9 at 936:20-937:9. Defendants argue that these statements constitute an admission by

28  Verinsky that Oak did not possess the concept of receiving multibyte CD-ROM commands through the

ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF INVALIDITY DUE TO IMPROPER
INVENTORSHIP – C-04-02619 RMW
WH/MAG                      18

1   IDE/ATA data port at address 1F0, but adapted the idea from Western Digital.  Mot. Summ. J. at 9.

2          Plaintiffs point out that there is some conflict in Verinsky's testimony about whether his request for

3   changing the address happened after he had the conversation with Peter Brown about Western Digital's

4   plan on using the data port.[19]  Hr'g at 30-31.  They argue this request was based on Verinsky's

5   understanding that Western Digital would be proposing the use of the ATA data port for receipt of

6   multibyte commands, but that Western Digital had not communicated this directly to Oak.  Plaintiffs argue

7   that the credibility of Verinsky's testimony is something that should be decided by the trier of facts.

8   Defendants, however, citing *Kennedy v. Allied Mutual Insurance* line of cases, counter that plaintiffs can

9   not defeat summary judgment by contradicting earlier sworn testimony.  *See Kennedy v. Allied Mutual*

10  *Insurance*, 952 F.2d 262 (9th Cir. 1991) ("a party cannot create an issue of fact by an affidavit

11  contradicting his prior deposition testimony").  Plaintiffs respond that even Verinsky's testimony as cited by

12  defendants confirms that Oak's COMIN could be accessed through a range of addresses, including 1F0.

13  They contend that during the deposition, Verinsky was never asked about whether he conceived using the

14  data port after he had heard it from Western Digital, he was only asked whether before June 7, 1993,

15  Oak's silicon design used 1F0.  Hr'g at 57:10-58:4.  Verinsky asked co-inventor Case to change the silicon

16  design, not the conception, to use address 1F0 on the schematics for the OTI-11 to receive multibyte

17  command data.  Therefore, they contend that the events around June 7, 1993 directed toward the choice of

18  1F0 were only the  implementation of the draft ATAPI standard for a commercial embodiment of the

19  previously conceived invention.  Opp'n at 17.

20                  **b.       Conclusions**

21          First, even assuming that defendants could prove that Shah or any other Western Digital employee

22  conceived of the receipt of multibyte commands through the data port, the court finds that there remains an

23  issue of fact with regard to whether the invention was communicated to Verinsky and Case prior to their

24  conception of 1F0 as the address for receiving multibyte commands. Defendants must prove both prior

25  _____

26          [19]      During a videotaped deposition in the 506 Investigation, Verinsky stated that he had
    "learned from Peter Brown – he understood or he has heard that ATAPI commands were being planned to
27  be sent through the data port by people developing, or proposing those commands" before June 7, 1993.
    Chen Decl., Ex. 8 (Verinsky 506-Tr.) at 541:11-22.  However, in subsequent hearing in the 506
28  Investigation, he testified that he did not "recall having discussion with Peter Brown as early as June 7th."
    Chen Decl., Ex. 9 (Verinsky 506-Tr.) at 939:2-942:9.

ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF INVALIDITY DUE TO IMPROPER
INVENTORSHIP – C-04-02619 RMW
WH/MAG                                        19

1    conception of an invention by another as well as communication of that conception to the inventors. *Eaton*

2    *Corp. v. Rockwell Int'l Corp.*, 323 F.3d 1332, 1344 (Fed. Cir. 2003). The parties agree that the earliest

3    Oak received the draft ATAPI specification was June 10, 1993. Yet, plaintiffs have also presented

4    testimony that Verinsky formally directed Case to implement the use of the 1F0 address in the schematics

5    as the address for the multibyte command buffer (COMIN/SBOUT) on June 7, 1993. Wainscoat Decl.,

6    Ex. 20 at 1047DO00476; Ex. 25 (Case Tr.) at 377-78. There appears to be a question of fact as to

7    whether the substance of the draft ATAPI specification was communicated to Oak prior to the date of the

8    ATAPI specification. *See, e.g.*, *id.*, Ex. 25 (Verinsky Tr.) at 938-42; 409 Hearing Transcript, Ex. 19 at

9    1656-57 (Q: "[d]o you recall an earlier transmission of the decision to go to a packetized commands [sic]

10   using the existing ATA task file registers to Mr. Brown or anyone else at Oak? A: I do not recall the date

11   that we first delivered a document to the folks at Oak.")

12            Second, based on the evidence presented, it is unclear that the draft ATAPI specification

13   contributed to the conception of the invention. The existence of the COMIN structure prior to the receipt

14   by the named inventors of the draft ATAPI specification demonstrates that the inventors anticipated

15   handling multibyte commands transmitted through command registers. The evidence presented by

16   defendants indicates that the COMIN structure was not designed to only accept multibyte commands from

17   a particular command block register. The inventors recognized that the commercial embodiment of the

18   invention, the OTI-11 needed task file registers using the COMIN FIFO. *See, e.g.*, Case Notebook,

19   Wainscoat Decl., Ex. 8 at 1049DOC0043 (under "Blocks needed in OTI-11 IDE interface" item 5: "Task

20   file registers using the COMIN FIFO" and later "If we want firmware control of the contents of the IDE

21   registers then the UD low must be able to be an input to the COMIN FIFO"). The named inventors had

22   considered a number of command block registers as possible candidates to receive multibyte commands.[20]

23

24            [20]    Defendants argue that Case refuted Verinsky's testimony that Case's notebook entry, found
      at Wainscoat Decl., Ex. 8 at 1049DOC0043, could be read to indicate that COMIN would be addressed
25    as a multi-byte command FIFO at 1F0. The court finds this argument unpersuasive. The testimony
      defendants contend supports their position reads as follows:
26
                 Q: Right.  So it's your understanding, then that this reference here, with the
27               2:0 in the brackets, is referring to three address lines that could address any
                 one of eight possible locations, correct?
28               A: Yes.
                 Q: So if somebody said that this open bracket 2:0 referred to a specific

1   Instead, the evidence indicates that the inventors expected that the firmware (software) would be able to

2   control the selection of the command block register. Verinsky Notebook, Wainscoat Decl., Ex. 11 at

3   1049DOC00033 (under entry dated February 23, 1993: "F/W [firmware] controls TASK/COMIN

4   selector BIT").  In other words, it appears that the named inventors may have contemplated that any

5   number of command block register addresses could have been utilized to transmit multi-byte command data

6   to the receiving structure.

7           Thus, the evidence presented demonstrates that the inventors did not consider it necessary to

8   specifically identify the address on the ATA bus through which multi-byte commands were received.  It

9   likewise demonstrates that they had considered several of the command block register addresses to be

10  candidates and contemplated the mechanism necessary to select the address.  Verinsky testified that as of

11  January of 1993, it was not critical as to what address was associated with the multibyte command FIFO

12  because any of the addresses would work for the multibyte command FIFO and that they were designing a

13  general idea and were trying to provide flexibility for the customer.  Wainscoat Del. Ex. 23, (Verinsky Tr.)

14  104:11-20.  Defendants have not put forth evidence as to why the use of the data port 1F0 was not an

15  obvious choice among the range of available addresses on the IDE bus.

16          As defendants argue, it is possible that the choice of address 1F0 was intended to ensure

17  compatibility of the controller with the draft ATAPI specification (a specification that could eventually

18  become a standard for CD-ROM and other ATAPI devices).  This is consistent with Verinsky's testimony

19  that Case implemented address 1F0 on the schematics after receiving the information that Western Digital

20  had plan to use 1F0 in the draft ATAPI specification on June 7, 1993.   Thus, the court finds there is an

21  issue of fact as to whether the alleged contributors from Western Digital were co-inventors of the '440 and

22  '527 patents.

23

24

25  ─────────────────────

26                  address, like 1F0, they would be wrong wouldn't they?
                    A: Yes

27  Chen Reply Decl., Ex. 3 at 329:17-332:14.  This testimony supports plaintiffs' contention that they had
    contemplated a range of possible addresses for receipt of multi-byte commands.  Case appears to indicate
28  that they had not yet selected a specific address.

1

**III.  ORDER**

2      For the foregoing reasons, defendants' motion for summary judgment of invalidity based on

3   improper naming of inventors is DENIED.

4

5   DATED:_____12/13/05_____          _____/s/ Ronald M. Whyte_____
                                                  RONALD M. WHYTE
6                                                 United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1   **Notice of this document has been electronically sent to:**

2   **Counsel for Defendant:**

3   James C. Otteson              jotteson@wsgr.com
    Lisa G. McFall                lmcfall@wsgr.com
4   Michael A. Ladra             mladra@wsgr.com

5

6   **Counsel for Plaintiff:**
    Gerald T. Sekimura           gsekimura@dlapiper.com
7   John Allcock                 JAllcock@dlapiper.com
    Mark Fowler                  mfowler@dlapiper.com
8   Thomas A. Burg               tburg@dlapiper.com
9   William G. Goldman           wgoldman@dlapiper.com

10

11

12  **Dated:**_____12/15/05_____        _____/s/ JH_____
13                                              **Chambers of Judge Whyte**

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF INVALIDITY DUE TO IMPROPER INVENTORSHIP – C-04-02619 RMW
WH/MAG                                          23